[Cite as *Baillis v. Ross*, 2012-Ohio-705.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97259**

---

## KEVIN BAILLIS, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## LAURA ROSS, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
**AFFIRMED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-754093

**BEFORE:**  Kilbane, J., Sweeney, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**  February 23, 2012

**ATTORNEYS FOR APPELLANTS**

Michael E. Cicero
Timothy L. McGarry
Nicola, Gudbranson & Cooper
Republic Building, Suite 1400
25 W. Prospect Avenue
Cleveland, Ohio 44115-1048

**ATTORNEYS FOR APPELLEES**

Adam M. Fried
Adriann S. Garland
Reminger Co., LPA
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115-1093

MARY EILEEN KILBANE, J.:

{¶1} Plaintiffs-appellants, Kevin Baillis ("Baillis") and Patricia Novak ("Novak") (collectively referred to as plaintiffs), appeal the trial court's judgment granting the motion to dismiss of defendants-appellees Laura Ross ("Laura") and Daniel Beears ("Daniel") (collectively referred to as defendants). Finding no merit to the appeal, we affirm.

{¶2} In April 2011, plaintiffs filed a complaint against Laura, Daniel, Christine Ross, Lindsay Ross, Jennifer Swanson, Jeffrey Beears, and Lisa Ross, asserting five causes of action. Plaintiffs alleged that a settlement agreement between plaintiffs, Donald, Laura, and Daniel provided that the plaintiffs were to receive certain bank accounts and 15 percent of Donald Beears's ("Donald") Trust upon his death, which was in January 2011. Baillis was friends with Donald for approximately 12 years before Donald's death. Novak lives with Baillis and was friends with Donald for approximately 12 years before Donald's death. Laura and Daniel are

Donald's children and trustees and co-executors of Donald's estate.[1] The plaintiffs allege that despite due demand, Laura and Daniel have refused to comply with the agreement. None of the parties signed this agreement before Donald's death.

{¶3} In Count 1 (breach of contract), the plaintiffs alleged that defendants breached the settlement agreement by failing to comply with its terms. In Count 2 (declaratory judgment), plaintiffs sought a declaration that the agreement is valid. In Count 3 (reformation of trust), plaintiffs sought reformation of Donald's Trust as set forth in the settlement agreement. In Count 4 (tortious interference with inheritance), plaintiffs alleged that defendants intentionally interfered with their reasonable expectation to receive certain assets upon Donald's death by filing a guardianship action in bad faith. In Count 5 (constructive trust), plaintiffs alleged that the failure of defendants to convey the assets identified in the agreement constituted a breach of constructive trust.

{¶4} In response to the plaintiffs' complaint, defendants filed a motion to dismiss pursuant to Civ.R. 12(B)(6), arguing that the filing of a guardianship application to protect an incompetent adult is not tortious conduct and no agreement was reached that would entitle plaintiffs to relief. Plaintiffs opposed, arguing that the settlement agreement is enforceable and Donald's Trust must be reformed.

{¶5} The trial court granted the defendants' motion as to all five counts, stating that

[i]nasmuch as the Decedent Donald Beears retained the sole discretion to name the Plaintiffs as a beneficiary of his Trust, and to name the Plaintiffs as beneficiaries on his accounts[,] and the unsigned "Agreement"did not require Donald Beears to provide any benefit to Plaintiffs except possibly future compensation for services rendered[,] and because [Donald] Beears is no longer alive, Plaintiffs claim for reformation must fail as a matter of law.

---

[1]Christine Ross, Lindsay Ross, Jennifer Swanson, Jeffrey Beears, and Lisa Ross are Donald's grandchildren and were never served with the complaint, as the plaintiffs do not know their whereabouts.

**{¶6}** It is from this order that plaintiffs appeal, raising the following single assignment of error for review.

ASSIGNMENT OF ERROR

The trial court incorrectly granted defendants' [Civ.R.] 12(B)(6) motion to dismiss as to all five counts of plaintiffs' complaint.

Standard of Review

**{¶7}** We apply a de novo standard of review to the trial court's granting of a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136. Under this standard of review, we must independently review the record and afford no deference to the trial court's decision. *Herakovic v. Catholic Diocese of Cleveland*, 8th Dist. No. 85467, 2005-Ohio-5985, 2005 WL 3007145, ¶ 13.

**{¶8}** In order for a trial court to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975). Also, a reviewing court accepts as true all material allegations of the complaint and makes all reasonable inferences in favor of the plaintiffs. *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, 816 N.E.2d 1061, ¶ 11. "[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a

defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

<u>Breach of Contract</u>

{¶9}    Plaintiffs first argue that the trial court erred when it dismissed their complaint because Donald intended to make certain distributions to them under the settlement agreement and defendants are in breach of the agreement by failing to abide by its terms.

{¶10} In the instant case, the settlement agreement resulted from defendants' concern that Donald was being exploited by the plaintiffs.   Plaintiffs, on the other hand, alleged that Donald had numerous disputes with defendants regarding his finances and living arrangements. Subsequently, Baillis filed a conservatorship action, with Donald's permission, to assist Donald with his finances.   In response, Laura filed an application for guardianship over Donald. Plaintiffs claim that there was no hearing in connection with the guardianship proceedings, instead the parties attempted to negotiate a settlement of their disputes.   Donald was represented by counsel during the conservatorship and guardianship proceedings and during the settlement negotiations.

{¶11}    The unsigned settlement agreement provided in pertinent part:

II.   AGREEMENTS WITH REGARD TO DONALD BEEARS' ASSETS

A.   The intent of this Agreement in regard to [Donald's] assets   is to give him as much control and flexibility with his assets as possible, but at the same time to protect him.

* * *

3.   [Donald], at his option and/or sole discretion, may designate any one or more of his individual accounts, payable on death to any person, party or entity to whom he desires.

* * *

III.   THE TRUST ACCOUNT

* * *

C.   [Donald] will enter into an Amendment to Trust that provides for the following:

* * *

5.   The Trust shall be further amended to provide the following:

b)   15% of the residue of Trust shall be distributed to [Novak] and [Baillis], share and share alike, per capita, at the sole discretion of [Donald]; [Donald] shall retain the right to revoke and/or reduce said distribution to [Baillis] and/or [Novak] at his discretion.

{¶12} Donald died before the agreement was finalized and executed by the parties.   The Ohio Supreme Court has stated:

> It is preferable that a settlement be memorialized in writing.   * * * However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract.   * * * Terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 36 O.O. 405, 75 N.E.2d 608, paragraph one of the syllabus * * *.   "A contract is generally defined as a promise, or a set of promises, actionable upon breach.   Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414.   A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 15-16.

{¶13} Plaintiffs acknowledge that the parties never executed the settlement agreement, but argue that Donald certainly intended to make distributions to them.   Their complaint alleges that a settlement agreement between plaintiffs, Donald, Laura, and Daniel provided that the plaintiffs were to receive certain bank accounts and 15 percent of Donald's Trust upon his death.  Plaintiffs further allege that defendants breached the agreement by failing to comply with its terms.

**{¶14}** Besides these allegations, there is nothing in the complaint indicating that the parties agreed to be bound by the terms of the settlement agreement. Specifically, the agreement was never executed and Donald's Trust was never amended. If the agreement was executed, Donald would have had the ability, at his option and sole discretion, to provide limited distributions to the plaintiffs. However, Donald never changed his Trust, nor did he make distributions to the plaintiffs. Because there is no settlement agreement, and thus, no binding contract, plaintiffs are not entitled to relief under a breach of contract theory of recovery.[2]

**{¶15}** Therefore, the trial court properly dismissed plaintiffs' breach of contract claim.

Declaratory Judgment

**{¶16}** Plaintiffs next argue the trial court erred by dismissing their claim for a declaratory judgment because they were prohibited from conducting discovery and proving that there was a settlement agreement that needed to be enforced.

**{¶17}** We note that in *Fioresi v. State Farm Mut. Auto. Ins. Co.*, 26 Ohio App.3d 203, 499 N.E.2d 5 (1st Dist. 1985), at the syllabus, the Ohio Supreme Court stated:

> [t]here are only two reasons for dismissing a complaint for declaratory judgment pursuant to Civ.R. 12(B)(6): (1) where there is no real controversy or justiciable issue between the parties, or (2) where the declaratory judgment will not terminate the uncertainty or controversy, under R.C. 2721.07. Otherwise, the court is required to issue a judgment declaring the rights or legal relations, or both, of the parties, and the court errs when it dismisses the complaint for failure to state a claim under Civ.R. 12(B)(6).

*See also Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. No. 91893, 2009-Ohio-1094, 2009 WL 625522.

---

[2]It also follows that Baillis should not be required, as the settlement agreement provides, to repay the loan he obtained from Donald, nor should the bank accounts have to be retitled to Donald's Trust.

**{¶18}** "A 'controversy' exists for purposes of a declaratory judgment when there is a genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Wagner v. Cleveland*, 62 Ohio App.3d 8, 13, 574 N.E.2d 533 (8th Dist. 1988), citing *Burger Brewing Co. v. Liquor Control Comm.*, 34 Ohio St.2d 93, 296 N.E.2d 261 (1973).

**{¶19}** In the instant case, there is no real controversy between the parties. As stated above, the settlement agreement was never executed by the parties, and Donald never exercised his discretion to gift to the plaintiffs. The unsigned agreement gave Donald the option to act. Because any future action by Donald is impossible, plaintiffs' claim for declaratory relief cannot survive. The court can only speculate as to why the settlement agreement was never signed, but could it be because Donald could "have made the rest of the transfers [to plaintiffs,] except for the guardianship proceedings filed" and defendants were "concerned that plaintiffs were financially exploiting Donald"?

**{¶20}** Thus, the trial court's dismissal of plaintiffs' declaratory judgment claim was proper.

### Trust Reformation

**{¶21}** Third, the plaintiffs, relying on R.C. 5804.15, argue that they stated a claim for reformation because Donald intended to amend his trust to provide a distribution for them.

**{¶22}** R.C. 5804.15 provides that "[t]he court may reform the terms of a trust, even if they are unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." Thus, R.C. 5804.15 requires clear

and convincing proof of both the settlor's intent and that the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

{¶23} In *Holdren v. Garrett*, 10th Dist. No. 09AP-1153, 2011-Ohio-1095, 2011 WL 825637 ¶ 28, the Tenth District Court of Appeals stated:

> [A] mistake of fact exists when one understands a fact to be different than it actually is. *In re Estate of Werner* (1985), 25 Ohio App.3d 31, 34, 495 N.E.2d 457. 'A mistake of law occurs where a person is truly acquainted with the existence or nonexistence of facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect.' *Nationwide Life Ins. Co. v. Myers* (1980), 67 Ohio App.2d 98, 102-03, 425 N.E.2d 952, quoting *Am. Oil Serv., Inc. v. Hope Oil Co.* (1965), 233 Cal.App.2d 822, 830, 44 Cal.Rptr. 60.

{¶24} In the instant case, plaintiffs' complaint fails to allege facts indicating there was a mistake of fact or law in Donald's Trust. Rather, the complaint alleges that the settlement agreement allowed Donald to give plaintiffs 15 percent of the Trust residue and transfer certain bank accounts upon death to plaintiffs. Moreover, the language of the unsigned agreement did not require Donald to provide any benefit to plaintiffs except possible future compensation for services rendered.

{¶25} Thus, the trial court properly dismissed plaintiffs' reformation claim.

<u>Tortious Interference with Inheritance</u>

{¶26} Fourth, plaintiffs argue their tortious interference with inheritance cause of action was properly pled because they alleged that they had an existence of expectancy based upon the language of the agreement and defendants interfered with that expectancy by instituting guardianship proceedings over Donald.

**{¶27}** In *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202 (1993), the Ohio Supreme Court set forth the elements of the tort of intentional interference with expectancy of inheritance as follows:

> (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant(s) with that expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference.

**{¶28}** In the instant case, the guardianship proceedings were instituted before the parties began negotiating the settlement agreement. As a result, the defendants did not interfere with plaintiffs' expectancy of inheritance. Furthermore, Donald never exercised his discretion to disburse gifts to the plaintiffs. Therefore, plaintiffs failed to demonstrate that they had a reasonable expectation of inheritance and that the expectancy of inheritance would have been realized, but for the interference by defendants. *See Miller v. Keybank Natl. Assn.*, 8th Dist. No. 86327, 2006-Ohio-1725, 2006 WL 871621 and *Werman v. Green ex rel. Estate of Green*, 11th Dist. No. 2000-L-033, 2001 WL 314712 (Mar. 30, 2001) (where this court and the Eleventh District Court of Appeal found that the plaintiffs had not proven a reasonable expectancy of inheritance.)

**{¶29}** Thus, the trial court properly dismissed plaintiffs' tortious interference with inheritance claim.

Constructive Trust

**{¶30}** Lastly, plaintiffs argue that the trial court should have allowed their claim for constructive trust because they alleged the terms of the settlement agreement provided that

Donald intended to give them certain funds, but the agreement could not be executed prior to Donald's death.

**{¶31}** The Ohio Supreme Court in *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 18, found that

> A constructive trust is a "trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice." (Footnotes omitted.) *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. A constructive trust is considered a trust because "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.* at 225, 9 OBR 565, 459 N.E.2d 1293, quoting *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 386, 389, 122 N.E. 378.

**{¶32}** We note that

> [a] constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud. [*Ferguson* at 226]; *Aetna Life Ins. Co. v. Hussey* (1992), 63 Ohio St.3d 640, 642, 590 N.E.2d 724. "[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." [*Ferguson* at 226], citing 53 Ohio Jurisprudence 2d (1962) 578-579, Trusts, Section 88; v. Scott on Trusts (3d Ed.1967) 3412, Section 462. *Id.* at ¶ 19.

> The party seeking to have a constructive trust imposed "bears the burden of producing clear and convincing evidence justifying it." *Id.* at ¶ 20, quoting *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, 772 N.E.2d 105, paragraph three of the syllabus.

**{¶33}** A constructive trust is an equitable remedy to unjust enrichment and fraud. In the instant case, the plaintiffs failed to raise these claims, and as such, they are not entitled to equitable relief. As previously stated, Donald retained the sole discretion, at all times, to amend

his Trust, retitle his assets, or make distributions, but did not do so prior to his death. Consequently, nothing is owed to plaintiffs, even on an equitable basis.

**{¶34}** Thus, the trial court properly dismissed plaintiffs' constructive trust claim.

**{¶35}** Accordingly, the sole assignment of error is overruled.

**{¶36}** Judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, P.J., and LARRY A. JONES, J., CONCUR