[Cite as *Coventry Group, Inc. v. Gottlieb*, 2014-Ohio-213.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 100056

# COVENTRY GROUP, INC.

PLAINTIFF-APPELLANT

vs.

# JOSHUA L. GOTTLIEB, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-803426

**BEFORE:**  Blackmon, J., Jones, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:**  January 23, 2014

**ATTORNEYS FOR APPELLANT**

Nicholas L. White
Richard M. White
Michael J. Montgomery
Baker & Hostetler L.L.P.
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

Susan L. Gragel
Andrew A. Crampton
Goldstein Gragel, L.L.C.
526 Superior Avenue, East
Suite 1040
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, J.:

{¶1} Appellant Coventry Group, Inc. ("Coventry") appeals the trial court's granting the Civ.R. 12(B)(6) motion to dismiss filed by appellees Joshua L. Gottlieb ("Gottlieb") and Charles M. Hall ("Hall") and assigns the following two errors for our review:

> I.  Tortious Interference with a Business Expectancy is a valid cause of action under Ohio Law.
>
> II.  Coventry can maintain its tortious interference claim against Gottlieb as principal of Capital creation and Gottlieb Agency.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision.  The apposite facts follow.

## Facts

{¶3} On March 20, 2013, Coventry filed a suit against Gottlieb and Hall for tortious interference of a business expectancy and civil conspiracy.  Coventry contended that its judgment against Capital Creation that it obtained in federal court constituted a valid business expectancy.

{¶4} The facts, as discerned from Coventry's complaint, are that Coventry is a privately owned financial services firm.  Gottlieb was the sole shareholder, officer and director of Capital Creation Co., Inc. ("Capital Creation"), which is an insurance brokerage company.  Hall was the advisor to Gottlieb regarding matters of operations, business formation, and business transactions.  Coventry alleged that Capital Creation failed to pay for commissions that were due and owing to Coventry that it earned through

the sale of corporate-owned life insurance policies that it co-brokered with Capital Creation.

{¶5} In September 2003, Coventry obtained a judgment against Capital Creation in the Federal District Court for the Northern District of Ohio in the amount of $713,789. Coventry alleged that when it sought to collect on the judgment, Capital Creation, at the advice and assistance of Hall, filed for bankruptcy protection in the United States Bankruptcy Court.

{¶6} Prior to filing for bankruptcy, Gottlieb, with Hall's assistance, formed a new company called J.L. Gottlieb Agency, Inc. ("JLGA"). Coventry contended that the purpose of the formation of JLGA and the bankruptcy filing was to preclude Coventry from collecting on the judgment.

{¶7} Coventry filed a successor liability action against JLGA on October 4, 2006, in the Cuyahoga County Common Pleas Court. After discovery disputes stalled the case, JLGA filed for bankruptcy. Coventry alleged the bankruptcy was filed to preclude JLGA from having to respond to Coventry's discovery requests and to prevent collection on the judgment. According to Coventry, Gottlieb continues to provide similar services as the two prior companies.

{¶8} Gottlieb and Hall filed a motion to dismiss the 2013 complaint contending that Coventry's tortious interference claim was invalid because the collection of a judgment did not constitute a business expectancy. The trial court granted Gottlieb's and Hall's motion and dismissed the complaint.

## Dismissal

{¶9}   In its first assigned error, Coventry argues the trial court erred by dismissing its complaint.

{¶10} A Civ.R. 12(B)(6) motion tests the sufficiency of the complaint, and the trial court, in ruling on such a motion, must take all the allegations in the complaint as true, drawing all reasonable inferences in favor of the nonmoving party.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988); *Pollock v. Rashid*, 117 Ohio App.3d 361, 367, 690 N.E.2d 903 (1st Dist.1996).   But a trial court does not have to presume the truth of legal conclusions asserted in the complaint when they are unsupported by factual allegations.  *Schulman v. Cleveland*, 30 Ohio St.2d 196, 198, 283 N.E.2d 175 (1972).   A court may dismiss a complaint on a Civ.R. 12(B)(6) motion only when it appears beyond doubt that the plaintiff can prove no set of facts that would entitle the plaintiff to relief.  *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; *Pollock* at 367-368.   This court reviews de novo a dismissal for failure to state a claim upon which relief can be granted.  *Hunt v. Marksman Prods.*, 101 Ohio App.3d 760, 656 N.E.2d 726 (9th Dist.1995).

{¶11}  The issue raised in this appeal is whether Coventry can maintain its action against Gottlieb and Hall under the doctrine of tortious interference with a business relationship when the gravamen of the interference is the collection of a judgment.  We conclude that Coventry cannot maintain its action under this premise.

**{¶12}** Based on the four corners of Coventry's complaint, its intent is to collect a debt owed to it by Gottlieb and Hall on a debt that was discharged in bankruptcy. Coventry has fashioned its action as tortious interference with a business expectancy, but at its core is the collection of a debt.

**{¶13}** At the outset, we note that courts in Ohio use the term "tortious interference with a business expectancy" and the term "tortious interference with a business relationship" interchangeably. Ohio does not recognize the tort of wrongful interference with a business expectancy that is separate from tortious interference with a business relationship. *EJS Properties, LLC v. Toledo*, 651 F.Supp.2d 743, fn 1. (N.D.Ohio 2009).

**{¶14}** Tortious interference with a business relationship "occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another." *A & B - Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). Preventing the collection of a judgment does not induce a third person to not enter into or continue a business relationship. The relationship at that point has already concluded. Thus, the tort of tortious interference with a business expectancy does not include tortious interference with the collection of a judgment.

**{¶15}** Nonetheless, Coventry cites to Ohio case law in support of its argument that the term "business expectancy" means more than prospective business relationships. Those cases, however, do not support its argument. For instance, Coventry cites to

*Drawl v. Cornicelli*, 124 Ohio App.3d 562, 706 N.E.2d 849 (11th Dist.1997), which is a case concerning the interference with the discovery of evidence in a sexual harassment case and has nothing to do with defining the term "business expectancy." Thus, it is far from analogous to the instant case.

{¶16} As we stated above, some cases in Ohio use the term "business expectancy," but they actually concern prospective business relationships. For example, Coventry relies on the Fifth District case of *Dixon v. Northridge Local School Dist. Bd. of Edn.,* 5th Dist. Licking No. 2007-CA-101, 2008-Ohio-2744. In *Dixon,* the court uses the term "business expectancy," but the case is actually about an employer's interference with a former employee's ability to enter into employment with subsequent employers. Thus, it involved interference with a prospective business relationship. *Dixon* also relied upon *Sony Electronics, Inc. v. Grass Valley Group, Inc.*, 1st Dist. Hamilton Nos. C-010133 and C-010423, 2002-Ohio-161, which is a case concerning prospective business relationships.

{¶17} Likewise, *Lee Turzillo Contracting Co. v. Raymond Intl.*, 5th Dist. Stark No. CA-4612, 1977 Ohio App. LEXIS 10256 (July 27, 1997), concerned the defendant interfering with the bidding process for a city contract thereby preventing the city from awarding the contract to the plaintiff. Therefore, the case concerned interference with a future contract or business relationship. *Kelly v. Buckley*, 193 Ohio App.3d 11, 2011-Ohio-1362, 950 N.E.2d 997 (8th Dist.), also discussed interference with a business relationship, not a business expectancy. We held in *Kelly* that to present a successful claim, Kelly had to show interference with the business relationship.

**{¶18}** Coventry also cites to cases that concern the tortious interference with an inheritance expectancy. *See Sull v. Kaim,* 172 Ohio App.3d 297, 2007-Ohio-3269, 874 N.E.2d 865 (8th Dist.); *McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013. These cases have nothing to do with a business expectancy. Also, interference with an inheritance expectancy is a tort that is recognized in Ohio. *Firestone v. Galbreath*, 67 Ohio St.3d 87, 616 N.E.2d 202 (1993). In recognizing this tort, the Ohio Supreme Court in *Firestone* found persuasive the fact that the Restatement provides for a cause of action for interference with an inheritance. 4 Restatement of the Law 2d, Torts, Section 774(B) (1979). Noticeably, the Restatement does not provide a cause of action for interference with the collection of a judgment. The Restatement sections pertinent to torts of interference only acknowledge torts regarding tortious interference with an inheritance and tortious interference with a current or future contract or business relationship. No mention is made regarding the interference with the collection of a judgment.

**{¶19}** Finally, Coventry cites to case law outside of Ohio to show that other states have recognized a tort for interference with the collection of a judgment. However, these cases are merely persuasive authority, and in light of the fact that Ohio has not recognized the tort of interference with the collection of a judgment, they are of negligible value. Coventry relies upon *James v. Powell*, 25 App. Div.2d 1, 266 N.Y.S.2d 245 (N.Y. App. Div. 1966), and two other New York cases referencing *Powell*: *Ritter v. Klisivitch*, E.D. New York No. 06-CV-5511, 2008 U.S. Dist. LEXIS 58818 (E.D.N.Y. July 30, 2008) and

*Strachman v. Palestinian Auth.*, 73 A.D.3d 124, 901 N.Y.S.2d 582 (N.Y. App. Div. 2010). *Powell* was subsequently reversed on other grounds. *James v. Powell*, 19 N.Y.2d 249, 279 N.Y.S.2d 10 (App. Div.1967). Also, five years after the *Powell* decision, a different New York court refused to adopt the tort of "tortious interference with a collection of judgment" discussed in *Powell* because it was contrary to New York law. *Vinlis Const. Co. v. Roreck*, 325 N.Y.S.2d 457, 463, fn. 1 (N.Y. Sup.Ct. 1971). Thus, whether tortious interference with the collection of a judgment is considered a tort in New York is open to debate. The other New York case cited by Coventry, *Peterson v. Islamic Republic of Iran*, 2013 U.S. Dist. LEXIS 146050 (S.D.N.Y. 2013), is a fraudulent conveyance case.

**{¶20}** Coventry does cite a case from Texas, *Cadle Co. v. Schultz*, 779 F.Supp. 392 (N.D.Tex. 1991), that holds that there is a tort of interference with the collection of a judgment, but this limited authority is not sufficient to entice us to extend the meaning of tortious interference with a business expectancy. Besides, Coventry has a remedy for the protection of a judgment pursuant to the fraudulent conveyance statutes. R.C. 1336.04 and 1336.05 both list judgments as being protected by the statute. Accordingly, Coventry's first assigned error is overruled.

**{¶21}** Given our disposition of the first assigned error, Coventry's second assigned error alleging Gottlieb could be personally liable for tortious interference is rendered moot and need not be addressed. App.R. 12(A)(1)(c).

**{¶22}** Judgment affirmed.

It is ordered that appellees recover from appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., P.J., and
SEAN C. GALLAGHER, J., CONCUR